

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

**GERALD C. MANN**
**ATTORNEY GENERAL**

Honorable Forrester Hancock
Criminal District Attorney
Waxahachie, Texas

Dear Sir:

Opinion Number O-4039
Re: Authority of a Home Rule
city to issue self-liqui-
dating bonds for the con-
struction or purchase of
a telephone system.

We have your letter requesting our opinion on the question —

"May a home rule city issue self-liqui-
dating bonds for the construction or pur-
chase of a telephone system?"

We assume from your question that it contemplates
the issuance of revenue bonds, to be paid from the proceeds
or net income of such system.

Article 1111 of Vernon's Annotated Civil Statutes
is a general law and reads as follows:

"All cities and towns including Home Rule
Cities operating under this title shall have
power to build and purchase, to mortgage and
encumber their light systems, water systems,
sewer systems, or sanitary disposal equipment
and appliances, or natural gas systems, parks
and/or swimming pools, either, or all, and
the franchise and income thereof and every-
thing pertaining thereto acquired or to be ac-
quired and to evidence the obligation therefor
by the issuance of bonds, notes or warrants,
and to secure the payment of funds to purchase
same; or to purchase additional water powers,
riparian rights, or to build, improve, enlarge,

BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Forrester Hancock, page #2

extend or repair such systems, or any one of
them, including the purchase of equipment,
and appliances for the sanitary disposal of
excreta and offal, and as additional security
therefor, by the terms of such encumbrance,
may grant to the purchaser under sale or fore-
closure thereunder, a franchise to operate the
systems and properties so purchased for a term
of not over twenty (20) years after purchase,
subject to all laws regulating same then in
force. No such obligation of any such system
shall ever be a debt of such city or town, but
solely a charge upon the properties of the sys-
tem so encumbered, and shall never be reckoned
in determining the power of any such city or
town to issue any bonds for any purpose author-
ized by law."

Home Rule cities find their source and authority in
Section 5, Article 11 of the Constitution and Article 1165
of Vernon's Annotated Civil Statutes, both of which read
identically. Article 1165 is the Enabling Act, enacted by
the Legislature subsequent to the adoption of Section 5,
Article 11, as an amendment to the Texas Constitution. Said
article reads as follows:

"Cities having more than five thousand (5000)
inhabitants may, by a majority vote of the quali-
fied voters of said city, at an election held for
that purpose, adopt or amend their charters, sub-
ject to such limitations as may be prescribed by
the Legislature, and providing that no charter
shall contain any provision inconsistent with the
Constitution of the State, or of the general laws
enacted by the Legislature of this State; said
cities may levy, assess and collect such taxes
as may be authorized by law or by their charters;
but no tax for any purpose shall ever be lawful
for any one year, which shall exceed two and one-
half per cent of the taxable property of such city,
and no debt shall ever be created by any city, un-
less at the same time provision be made to assess

and collect annually a sufficient sum to pay
the interest thereon and create a sinking
fund of at least two per cent thereon; and
provided thrther, that no city charter shall
be altered, amended or repealed oftener than
every two years."

Article 1175 is a general law enumerating certain
powers that may be exercised by Home Rule cities which have
adopted a charter or the amendment above quoted. This arti-
cle reads, in part, as follows:

"Cities adopting the charter or amendment
hereunder shall have full power of local self-
government. Among the other powers that may
be exercised by any such city, the following
are hereby enumerated for greater certainty:
* * *

"Sec. 10. The power to control and manage
the finances of any such city; to prescribe
its fiscal year and fiscal arrangement; the
power to issue bonds upon the credit of the city
for the purpose of making permanent public im-
provements or for other public purposes in the
amount and to the extent provided by such char-
ter and consistent with the Constitution of this
State; * * *.

"Sec. 13. To buy, own, construct within or
without the city limits and to maintain and
operate a system or systems of gas or electric
lighting plants, telephones, street railways,
sewerage plants, fertilizing plants, abattoirs,
municipal railway terminals, docks, wharves,
ferries, ferry-landings, loading and unloading
devices as shipping facilities, or any other
public service or public utility, and to demand
and receive compensation for service furnished
for private purposes or otherwise, and to exer-
cise the right of eminent domain as hereinafter
provided for the appropriation of land, rights
of way or anything whatsoever that may be proper

and necessary to efficiently carry out said
object. Any city shall have power to con-
demn the property of any person, firm or cor-
poration now conducting any such business, and
for the purpose of operating and maintaining
any such public utilities and for the purpose
of distributing such service throughout the
city or any portion thereof; provided that
any city may adopt by its charter any such
rules and regulations as it may deem advis-
able for the acquiring and operation of any
such public utilities." (Underscoring ours).

It will be seen from a reading of Articles 1111 and
1175, above quoted, that by a general enactment, Home Rule
cities are given the express power to do the various things
enumerated in each of the two statutes. Under the general
law a Home Rule city may issue revenue bonds for the purposes
enumerated in Article 1111. This was an authority granted to
both general law cites and Home Rule cities. Under the terms
of Article 1175, a Home Rule city, by adopting charter provi-
sions authorizing it to acquire the various public utilities
enumerated under Section 13 thereof, could under Section 10
of Article 1175, above quoted, issue bonds for such purposes.

Section 33 of Article 1175 reads as follows:

"Whenever any city may determine to acquire
any public utility using and occupying the
streets, alleys and avenues as hereinabove pro-
vided, and it shall be necessary to condemn the
said public utility, the city may obtain funds
for the purpose of acquiring the said public
utility and paying the compensation therefor
by issuing bonds, notes or other evidences of
indebtedness, and shall secure the same by fix-
ing a lien upon the said properties constitu-
ting the said public utility so acquired by
condemnation, purchase or otherwise; said secu-
rity shall apply alone to said property so pledg-
ed; and such further regulations may be provided
by any charter for the proper financing or rais-
ing the revenue necessary for obtaining any public
utility and providing for the fixing of said se-
curity." (Underscoring ours).

The Legislature of the State has all power to enact laws except as may be inhibited by the Constitution of the State or Nation. It does not have to look to the Constitution for a grant of power to enact laws but only to see if it is inhibited from acting. And a city does not, since the adoption of Section 5, Article 11, longer have to look to the Legislature for a grant of power to act (this being given by the Constitution), but only look to Acts of the Legislature to see if it has placed any limitations on the power to act granted by Section 5 of Article 11. If the Legislature has placed no limitation on the power of a city to act and the provision is inconsistent with no provision of the Constitution or the general laws of the State, the power of the city is as general and broad as is the power of the Legislature to act. We no longer must look to the Legislature to grant to a city the power to amend its charter or to insert therein any given provision, but we only look to the Acts of the Legislature to see if that body by any provision adopted has placed any limitation on the power of a city to act in a given matter. If therein we find no limitation placed on a city to amend its charter in any given particular, and such provision is inconsistent with no provision of the Constitution and no general law of the State, the city has the authority to so amend its charter and adopt such provisions without any grant of power further than that conferred by Section 5, Article 11 of the Constitution. See the case of Legois v. State, 190 S. W. 724.

It appears therefore that there are no limitations in the general laws which would inhibit a Home Rule city from issuing revenue or self-liquidating bonds to purchase a telephone system. On the contrary it appears that Home Rule cities have the express authority by general law to acquire such a system if such a provision has been adopted in the charter of such city.

We are, therefore, of the opinion that if a city has adopted a charter provision authorizing the acquisition of such a system and has authorized the issuance of revenue or self-liquidating bonds to purchase same, that it would not be inconsistent with the Constitution or general laws of this State.

Trusting that the foregoing fully answers your inquiry, we are

APPROVED OCT 16, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Clarence E. Crowe_
Clarence E. Crowe
Assistant

CEC-s



APPROVED
OPINION
COMMITTEE

BY
CHAIRMAN